FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND
2018 MAY -4 P 5:04
CLERK'S OFFICE
AT GREENBELT
BY_____DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

THE CENTER FOR ADVANCING
INNOVATION, INC.,

 Plaintiff,

v.             Case No.: GJH-18-1119

SAMUEL BAHREINI, *et al.*,

 Defendants.

## MEMORANDUM OPINION

In this case, Plaintiff The Center For Advancing Innovation, Inc. ("CAI") initiated this litigation against Defendants Samuel Bahreini, Alejandra Diaz (aka Alejandra Bahreini), Jenna Baker (a former CAI employee who allegedly does business as "Konstellate"), John Doe Companies 1-10 and Robin Roes 1-10 alleging one count of violating the Defense of Trade Secrets Act ("DTSA") pursuant to 18 U.S.C. § 1836.[1] ECF No. 1. On May 1, 2018, CAI filed the now-pending Motion For Temporary Restraining Order ("TRO") and For Preliminary Injunction. ECF No. 8. The Court held a hearing on CAI's Motion on May 4, 2018. ECF No. 19. For the reasons discussed below, CAI's Motion is denied.

**I. BACKGROUND**

On April 18, 2018, CAI filed the instant Complaint against Defendants ECF No. 1. The Complaint was brought pursuant to 18 U.S.C. § 1836 of the DTSA. Prior to filing this lawsuit, on February 16, 2018, CAI filed a complaint in the Circuit Court for Montgomery County,

---

[1] Defendant Baker has not yet been served in this action, nor have the unnamed Defendants. All briefing on the pending Motion for TRO has been submitted by Defendants Mr. and Mrs. Bahreini, who the Court refers to herein as "Defendants."

Maryland, Case No. 443339V. On March 12, 2018, the Bahreinis sued CAI and Rosemarie Truman alleging unpaid wages and defamation. Case No. 444106V.

CAI is a Maryland 501(c)(3) corporation whose founder and CEO is Rosemarie Truman. ECF No. 1 ¶ 1. Among other projects it oversees, CAI coordinates, hosts and manages conference calls and webinars which are attended by inventors, researchers, scientists, universities, and other companies in which products (some of which are still being developed) are reviewed, discussed and evaluated. *Id.* ¶ 12. All participants are required to sign a non-disclosure agreement ("NDA"). CAI records and saves non-public, confidential and proprietary information regarding these webinars and the products discussed therein. *Id.* ¶ 14. CAI also maintains confidential financial models and client lists, along with confidential internal and external emails. *Id.* ¶¶ 26–27. To store this information, CAI utilizes a number of different software platforms. *Id.* ¶ 28.

Defendants Mr. and Mrs. Bahreini previously worked for CAI. Mr. Bahreini managed CAI's software platforms, and Mrs. Bahreini worked as Ms. Truman's executive assistant. *Id.* ¶¶ 29, 35. Both Mr. and Mrs. Bahreini signed NDAs as part of their employment contracts. *Id.* ¶¶ 32, 36. Neither the NDAs nor the Bahreinis' contracts contained non-compete clauses. *See* ECF Nos. 1-1, 1-2, 1-3, 1-4, 1-5. Mrs. Bahreini's contract was terminated on January 17, 2018, and Mr. Bahreini's contract was terminated on January 21, 2018. *Id.* ¶¶ 40–41.

On January 17, 2018, at 8:35 AM, the day that Mrs. Bahreini's contract was terminated, CAI alleges that Ms. Truman removed Mr. Bahreini's access to CAI's Google Cloud account, and advised him that his administrative rights to all of CAI's data were being terminated. *Id.* ¶ 44. Later that day, another CAI employee restored Mr. Bahreini's access to his administrative privileges. *Id.* Mr. Bahreini subsequently downloaded over a thousand CAI files, some of which

CAI alleges contained trade secrets, and confidential and proprietary information. *Id.* ¶ 45. On January 23, 2018, the day that Mr. Bahreini's contract was terminated, Mr. Bahreini downloaded another 790 files from CAI's account. *Id.* ¶ 50. On January 26, 2018, he downloaded four more files. *Id.* ¶ 51. CAI alleges that Mr. Bahreini did not stop with simply downloading CAI documents, but went into CAI accounts and changed the ownership and access rights of various accounts to block CAI's access to those accounts and documents stored therein. *Id.* ¶¶ 54–63. Furthermore, CAI alleges that Mr. Bahreini has since sought money from CAI in exchange for the return of its files, and kept for himself refunds of CAI subscriptions that he cancelled. *Id.* ¶ 67. CAI also alleges that Mr. Bahreini has sent disparaging emails to clients of CAI. *Id.* ¶ 66. CAI alleges that Mr. Bahreini's actions have caused CAI to reach out to CAI's stakeholders and re-establish key information, along with access to their various accounts, at CAI's inconvenience and expense. *Id.* ¶ 70. CAI alleges that it is unclear whether they have uncovered the full extent of Mr. Bahreini's misconduct, as they are still discovering additional tampering. *Id.* ¶ 72.

CAI also alleges that Mrs. Bahreini conspired with Mr. Bahreini and supplied him with Ms. Truman's account passwords to help him gain access to CAI accounts. *Id.* ¶ 79. CAI alleges that the Bahreinis have refused to return CAI's property and information, and that the Bahreinis have shared some of CAI's trade secrets with John Doe corporations and Robin Roes. *Id.* ¶¶ 85–86. CAI also alleges that the Mr. Bahreini is now working with Defendant Baker, as Mr. Bahreini has used the email address "sam.bahreini@konstellate.com." *Id.* ¶ 89. Konstellate is the alleged trade name for one of CAI's competitors, run by Defendant Baker, a former CAI employee. *Id.* ¶ 5.

In its Complaint, CAI asserts that Defendants have violated the Defense of Trade Secrets Act, 18 USC § 1836, and asks the Court for (1) an order for a civil seizure pursuant to 18 USC §

1836(b)(2)(A) for all electronic devises owned or controlled by the Bahreinis associated with a certain IP address or which communicated with CAI's devices or accounts from April 24, 2017 to the present; (2) an order for injunctive relief against Defendants prohibiting the misappropriation of CAI's trade secrets, prohibiting the use of CAI's trade secrets, and prohibiting anyone who has received CAI's trade secrets from competing with CAI; and (3) a monetary reward in excess of $10 million. ECF No. 1 at 22–23.[2]

On April 18, 2018, CAI filed a Motion for Expedited Hearing regarding its Complaint, alleging that it would suffer severe and irreparable harm absent relief. ECF No. 3. The next day, on April 19, 2018, the Court ordered CAI to re-file its Motion as a Motion for a Temporary Restraining Order and Preliminary Injunction pursuant to Federal Rule of Civil Procedure 65, and to address the relevant legal standard laid out by the Fourth Circuit in *Real Truth About Obama, Inc. v. FEC*, 557 F.3d 342 (4th Cir. 2009). ECF No. 4. Eleven days later, on April 30, 2018, CAI filed its now-pending Motion For Temporary Restraining Order and For Preliminary Injunction, ECF No. 6, which it supplemented on May 1, ECF No. 8.

On May 3, 2018, the Defendants filed an Opposition to Plaintiff's Motion for a TRO, ECF No. 15, and a Motion to Dismiss, Or, In The Alternative, For More Definite Statement, ECF No. 16.[3] In their Opposition, Defendants argue that CAI has not provided "clear proof" to warrant a TRO; that CAI has not demonstrated "extraordinary circumstances" to warrant a civil seizure; and that CAI's information does not meet the definition of a "trade secret."

Along with their Opposition, the Defendants submit Sam Bahreini's Affidavit. ECF No. 15-3. Among other things, this document asserts that: CAI's contact list was not developed by Ms. Truman, but was acquired from her former employer, *id.* ¶ 7; CAI's business model and

---

[2] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.
[3] The Motion to Dismiss will not be considered at this juncture as it has not been fully briefed.

projects are not confidential, but are regularly published online, *id.* ¶¶ 13; Mr. Bahreini was not informed on January 17, 2018, that his account access was being terminated and was asked by Ms. Truman to continue working for CAI, *id.* ¶ 15; the Bahreinis have not disseminated any of CAI's information to any third party, *id.* ¶ 24; and the only devices the Bahreinis used to work for CAI were submitted to their counsel, *id.* ¶ 27.

Finally, on May 4, 2018,[4] hours before the motion hearing held in this case, CAI filed a reply to Defendants' Opposition, along with 23 exhibits. ECF No. 17. CAI submits the Declaration of Ms. Truman along with evidentiary exhibits that CAI alleges undermines the credibility of Mr. Bahreini's Affidavit and which demonstrates the harm that CAI may suffer absent a TRO or order authorizing a civil seizure. ECF No. 17-1. In its reply and corresponding Declaration, CAI makes two points. First, CAI attacks Mr. Bahreini's contention that he has "no knowledge of any business owned, formed, or operated by Ms. Baker," and that his "@konstellate.com" email address was not related to Ms. Baker. *See* ECF No. 15-3 ¶¶ 23, 25. CAI attaches documentary evidence indicating that Konstellate is an entity founded by Jenna Baker that seems to compete with CAI, ECF Nos. 17-16, 17-17, 17-18, 17-19, which Mr. Bahreini was aware of and active in as early as April 2, 2018, ECF No. 17-22. Second, CAI argues that Mr. Bahreini and Konstellate have taken CAI's due diligence of a product called "CardioSense" and used it to solicit business from the University of Pittsburgh—a "CAI stakeholder"—in early April 2018. ECF No. 17 at 2.

---

[4] May the Fourth is well-known as "Star Wars Day," chosen as a pun for the catchphrase "May the Force be with you." It was the Jedi master Yoda who wisely said "So certain were you. Go back and closer you must look." As discussed below, with each new filing by the parties, the Court is introduced to new facts. With the record in front of it, the Court is not convinced that CAI has met its burden for a TRO, but is open to discussing expedited discovery and/or an evidentiary hearing.

## II. STANDARD OF REVIEW

To obtain a TRO or a preliminary injunction, moving parties must establish that (1) they are likely to succeed on the merits, (2) they are likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in their favor, and (4) an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). A moving party must satisfy each requirement as articulated. *Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 347 (4th Cir. 2009), *vacated on other grounds*, 559 U.S. 1089 (2010). Because either a TRO or a preliminary injunction is "an extraordinary remedy," it "may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22.

## III. DISCUSSION

### A. Civil Seizure Pursuant to 18 U.S.C. § 1836

Beyond merely pursuing a TRO, Plaintiff seeks a civil seizure of certain electronic devices. In "extraordinary circumstances" the court may issue an order "providing for the seizure of property necessary to prevent the propagation or dissemination of the trade secret that is the subject of the action." 18 U.S.C. § 1836(b)(2)(A)(i). To approve such a request, the Court must find, among other things, that "an order issued pursuant to Rule 65 of the Federal Rules of Civil Procedure or another form of equitable relief would be inadequate to achieve the purpose of this paragraph because the party to which the order would be issued would evade, avoid, or otherwise not comply with such an order." *Id.* § 1836(b)(2)(A)(ii)(I). Beyond this requirement, § 1836 mirrors the requirements for a TRO and requires a court to find that "an immediate and irreparable injury will occur if such seizure is not ordered," "the harm to the applicant of denying the application outweighs the harm to the legitimate interests of the person against whom seizure would be ordered," and "the applicant is likely to succeed" on the merits of his claim. *Id.* §

(b)(2)(A)(ii)(II)–(IV). The application for such an order must "describe[] with reasonable particularity the matter to be seized and, to the extent reasonable under the circumstances, identifies the location where the matter is to be seized." *Id.*

As both a TRO and § 1836 order for a civil seizure require the Court to determine that CAI has a likelihood of success on the merits of its claim and will suffer irreparable harm absent such an order, the Court addresses these requirements below.

### B. Likelihood of Success on the Merits

Plaintiff alleges a single count under the Defense of Trade Secrets Act, 18 U.S.C. § 1836. The DTSA authorizes private civil actions by "[a]n owner of a trade secret that is misappropriated" "if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce." 18 U.S.C. § 1836(b)(1). The DTSA authorizes courts to award injunctive relief and damages for "actual loss," "unjust enrichment" or "reasonable royalt[ies]." *Id.* § (b)(3)(B)

A "trade secret" is defined as "all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if (A) the owner thereof has taken reasonable measures to keep such information secret; and (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information." 18 U.S.C. § 1839(3).

7

In this context, "misappropriation" means, among other things, "acquisition" or "disclosure" "of a trade secret of another by a person who" acquires the trade secret through "theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means." 18 U.S.C. § 1839(5)–(6).

Here, CAI has not made a "clear showing" that it is likely to succeed on the merits of its § 1836 claim. In its Motion, CAI argues that Mr. Bahreini downloaded documents and emails after his account access was terminated. ECF No. 8-1 at 7.[5] However, CAI cannot make a clear showing as to which, if any, of these files meet the definition of a trade secret. CAI provides spreadsheets with the names of the documents which Mr. Bahreini downloaded, *see, e.g.*, ECF No. 1-7, and alleges generally that these documents fall into one of eight categories of trade secrets, ECF No. 1 at 3–8. On the other hand, in his affidavit, Mr. Bahreini alleges that the documents he downloaded were not trade secrets and that he downloaded the documents at the direction of Ms. Truman, who instructed him to continue performing work for CAI after January 17, 2018. ECF No. 15-3 at 3. In fact, in their Opposition brief, Defendants point out that a number of the documents flagged by CAI as "trade secrets" are actually readily available on the Internet. *See* ECF No. 15-1 at 10–12. There may end up being trade secrets contained in the documents downloaded by Mr. Bahreini; however, in the few days since CAI filed its TRO, Defendants have already pointed out numerous files that CAI claimed were trade secrets that are actually publicly available online, causing the Court to doubt Plaintiff's representations that other documents are in fact trade secrets. Thus, based on the record, CAI has not sufficiently made a clear showing that Mr. Bahreini misappropriated trade secrets from CAI. As such, CAI has not shown a likelihood of success on the merits of its § 1836 claim.

---

[5] CAI also argues that Mr. Bahreini changed CAI's accounts and access in an attempt to sabotage the company. ECF No. 8-1 at 8. These allegations are not relevant in this case, as CAI alleges only a count under the DTSA.

### C. Likelihood of Irreparable Harm

Even if CAI had made a showing of likelihood of success on the merits, it would still need to show that there is a likelihood that it will suffer irreparable harm absent a TRO or § 1836 civil seizure.

Irreparable harm is generally found where the moving party suffers a harm that cannot be compensated by an award of money damages. *See Hughes Network Sys., Inc. v. InterDigital Commc'ns Corp.*, 17 F.3d 691, 694 (4th Cir.1994). "When the failure to grant preliminary relief creates the possibility of permanent loss of customers to a competitor or the loss of goodwill, the irreparable injury prong is satisfied." Wachovia Ins. Serv., Inc. v. Hinds, Civ. No. WDQ–07–2114, 2007 WL 6624661, at *3 (D.Md. Aug.30, 2007) (quoting *Multi–Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co.*, 22 F.3d 546, 552 (4th Cir.1994)). Irreparable harm must be "neither remote nor speculative, but actual and imminent." *Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 812 (4th Cir.1991) (quotation and citation omitted). This Court has previously found that a plaintiff is likely to suffer irreparable harm in a trade secrets case where a plaintiff shows a probability that it will lose customers absent injunctive relief. *Gen. Parts Distribution, LLC v. St. Clair*, No. 11-CV-03556-JFM, 2011 WL 6296746, at *6 (D. Md. Dec. 14, 2011).

CAI has not made a "clear showing" that it is likely to suffer irreparable harm absent a TRO or order authorizing a civil seizure. In its Motion for TRO, CAI argues that if its financial models ended up in the hands of a competitor, "this information could divert business from CAI to the competitors." ECF No. 8-1 at 9. CAI does not make a clear showing, however, that this is imminent and provides only speculative harm. In fact, Mr. Bahreini attests that he has not disseminated any of CAI's information to any third parties, and that the devices that he and his

9

wife used while working for CAI are currently in the custody of his attorney. ECF No. 15-3 ¶¶ 24, 27. Regarding Ms. Baker's interactions with the University of Pittsburgh, CAI has not made a clear showing that they will suffer any irreparable harm. The emails provided by CAI between Ms. Baker and the University of Pittsburgh are from early April 2018, and there is no indication whether Ms. Baker and Konstellate have moved forward with any business relationship. Furthermore, CAI simply refers to the University of Pittsburgh as a "CAI stakeholder," but does not indicate whether CAI was planning to pitch the CardioSense product to the University itself, or whether Konstellate's interactions with the University could cause it to cease being a "CAI stakeholder." Thus, CAI has not shown that it is likely to suffer irreparable harm.

## IV. CONCLUSION

For the foregoing reasons, CAI's Motion For Temporary Restraining Order And For Preliminary Injunction, ECF No. 8, is denied. A separate Order shall issue.

Date: May 4, 2018

GEORGE J. HAZEL
United States District Judge